1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**DISTRICT OF ARIZONA**

10
11

12  **CYA OIL & GAS INVESTMENTS,**
    **LLC,**
13
                      **Plaintiff,**           **2:12-cv-00212 JWS**
14
             **vs.**                           **ORDER AND OPINION**
15
    **ISIS, LLC OF OKLAHOMA, *et al.*,**        **[Re: Motion at Docket 8]**
16
                      **Defendants.**
17

18
                        **I.  MOTION PRESENTED**
19
            At docket 8, defendants ISIS, LLC of Oklahoma ("ISIS"), Freeman Properties,
20
    LLC, C.R. "Bobby" Freeman ("Freeman"), and Tammy Freeman (collectively
21
    "defendants") move pursuant to Federal Rule of Civil Procedure 12(b)(1) to dismiss
22
    some of plaintiff's state law claims for lack of subject matter jurisdiction.[1]  Plaintiff CYA
23
    Oil & Gas Investments, LLC ("CYA" or "plaintiff") opposes the motion at docket 14.
24
25
26  _____

27      [1]The motion states that defendants are moving pursuant to Rule 12(b)(6), but it is clear
    that defendants are asking the court to decline to exercise supplemental jurisdiction over
28  plaintiff's state law claims.

1   Defendant's reply is at docket 17.  Oral argument was requested but would not assist
2   the court.

3                                   **II.  BACKGROUND**[2]

4           This lawsuit arises out of a failed oil and gas project in Oklahoma.  CYA is a
5   Texas limited liability company.  Hung Simon Vo ("Simon Vo") was the representative of
6   CYA.  Based on discussions between Freeman, who represented to have purchased
7   ISIS, and Steve Hutchinson ("Hutchinson"), an officer of ISIS–and Simon Vo, CYA
8   invested at least $655,000 in ISIS and later, Black Gold, LLC ("Black Gold"), during
9   2008 and 2009.[3]  Black Gold was created by Freeman in 2009 to insulate investors in
10  ISIS from counterclaims against Freeman in a lawsuit against the original owners of
11  ISIS.  Freeman was the managing member of Black Gold.

12          Among the representations made to Simon Vo were that Freeman, through his
13  ownership of ISIS, had production rights at three wells–the HFA #1, Adkins, and Yvonne
14  wells–and that early investors could get a return of 25 times their investment.  CYA
15  maintains that Freeman represented to Simon Vo that combined expected revenue from
16  all three wells would exceed $45 million in the first year of production.  CYA claims that
17  Freeman actually did not have production rights at any of the three wells.  CYA also
18  maintains that Freeman used investors' funds to make the down payment in the stock
19  purchase agreement by which Freeman was to purchase ISIS and did not disclose that
20  to investors.

21          Freeman replaced the independent operators of all three wells with his own
22  company, Last Run, LLC ("Last Run").  Last Run shut down the Yvonne well
23  approximately one month after operations began.  CYA claims that the failure of the
24  Yvonne well was not disclosed to CYA and that Last Run billed Black Gold

25

26          [2]This background is taken from the complaint at docket 1.

27          [3]It is not clear from the complaint whether CYA invested $655,000 in ISIS and another
28  $655,000 in Black Gold or whether $655,000 was CYA's total investment.

1  approximately $1.4 million during the Yvonne well's month of operation.  Last Run also

2  had difficulties drilling at the other wells and production was dismal.

3       Black Gold considered a cash call from investors after funds dried up.  In

4  response, Black Gold's board requested an accounting.  CYA states that Freeman

5  could not provide a coherent accounting.  CYA maintains that in December 2010

6  Freeman hired an accounting firm to perform a preliminary review of Black Gold's

7  accounting.  The firm concluded that Black Gold paid approximately $1.9 million directly

8  to Freeman without invoices, that numerous expenses could not be tied to well-related

9  work and that over 50% of all expenses were not invoiced.  The preliminary review also

10  concluded that Black Gold was approximately $900,000 in debt but only received total

11  revenues from all wells of $416,528.

12       CYA filed suit in federal court in January 2012.  CYA has asserted claims for

13  breach of contract, breach of fiduciary duty, misrepresentation, securities fraud under

14  Arizona law, federal securities fraud, rescission, and accounting.  The court has original

15  jurisdiction over CYA's three federal securities fraud claims pursuant to 28 U.S.C.

16  § 1331.  Defendants argue that several of CYA's state law claims should be dismissed.

17  ### III.  STANDARD OF REVIEW

18       Under Federal Rule of Civil Procedure 12(b)(1), a party may seek dismissal of an

19  action for lack of subject matter jurisdiction.  In order to survive a defendant's motion to

20  dismiss, the plaintiff has the burden of proving jurisdiction.[4]  Where the defendant brings

21  a facial attack on the subject matter of the district court, the court assumes the factual

22  allegations in the plaintiff's complaint are true and draws all reasonable inferences in the

23  plaintiff's favor.[5]  The court does not, however, accept the truth of legal conclusions cast

24  in the form of factual allegations.[6]

25

26  [4]*Tosco v. Cmtys. for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2000).

27  [5]*Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009).

28  [6]*Id.*

1

**IV.  DISCUSSION**

2    Pursuant to 28 U.S.C. § 1367(a), "in any civil action of which district courts have

3    original jurisdiction, the district courts . . . have supplemental jurisdiction over all other

4    claims . . . that . . . form part of the same case or controversy under Article III."[7]  "A state

5    law claim is part of the same case or controversy when it shares a common nucleus of

6    operative fact with the federal claims and the state and federal claims would ordinarily

7    be tried together."[8]  A district court may nonetheless decline to exercise supplemental

8    jurisdiction over state claims if the state claims "substantially predominate" over the

9    federal claims.[9]

10    Defendant makes two arguments.  First, defendant argues that plaintiff's state

11    claims are unrelated to plaintiff's federal claims and, therefore, the court is without

12    supplemental jurisdiction.  Second, defendant argues that even if the court has

13    supplemental jurisdiction, plaintiff's state claims substantially predominate the federal

14    claims and the court should decline to exercise jurisdiction.

15    Defendant's first argument confuses "derive from" with "arises out of."  Even

16    though the facts that would support plaintiff's federal claims differ from those that would

17    support plaintiff's state claims, that does not mean that they do not *derive from* the

18    same nucleus of operative fact.  Plaintiff's state claims for breach of contract based on

19    CYA's investment in Black Gold and ISIS, and breach of fiduciary duty against Freeman

20    can be traced to the alleged securities fraud that forms the basis of plaintiff's federal

21    claims.  Moreover, state claims for breach of a limited liability company membership

22    contract and breach of fiduciary duty related to management of the company would

23    ordinarily be tried with federal claims for securities fraud when the securities fraud

24    allegedly induced the contractual relationship.  Plaintiff's state and federal claims

25

26    [7]28 U.S.C. § 1367(a).

27    [8]*Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004).

28    [9]28 U.S.C. § 1367(c)(2).

-4-

1   therefore derive from a common nucleus of operative fact, and the court has
2   supplemental jurisdiction over plaintiff's state claims.

3          Defendants argue that the state claims predominate plaintiff's federal claims and
4   therefore the court should decline to exercise supplemental jurisdiction.  Defendants'
5   argument is conclusory–they do not articulate which claim predominates or how.  The
6   primary case cited by defendants as support for their position, *Stevedoring Svcs. of Am.*
7   *v. Eggert*,[10] involved original federal jurisdiction over an administrative order requiring
8   payment of $60 in attorney's fees and the erroneous exercise of supplemental
9   jurisdiction over state claims to recover $96, 551.55 in alleged overcompensation.[11]  It is
10  not clear that plaintiff's state claims in this case, even if considered in the aggregate,
11  would substantially predominate over plaintiff's federal securities fraud claims.
12  Certainly, it is not such a clear cut situation that the exercise of supplemental jurisdiction
13  would be inappropriate.

## V.  CONCLUSION

15         For the reasons above, defendants' motion at docket 8 to dismiss plaintiff's state
16  law claims for breach of contract, breach of fiduciary duty, and accounting for lack of
17  subject matter jurisdiction pursuant to Rule 12(b)(1) is **DENIED**.

18         DATED this 4th day of June 2012.

                                            _____
20                                                      /s/
                                            JOHN W. SEDWICK
21                                          UNITED STATES DISTRICT JUDGE

---

27   [10]953 F.2d 552 (9th Cir. 1992).

28   [11]*Id.* at 554, 558.